UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN FIELDS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>RONALD VOGEL, et al.,<br><br>　　　　Defendants. | Case No.: 1:10-cv-01701-AWI-BAM PC<br><br>FINDINGS AND RECOMMENDATIONS REGARDING (1) DEFENDANT'S MOTION TO STRIKE; AND (2) DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br>(ECF Nos. 44, 60) |

**I.   Introduction**

Plaintiff Kevin Fields ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action proceeds on Plaintiff's second amended complaint against Defendant Vogel for retaliation in violation of the First Amendment.

On May 28, 2013, Defendant Vogel filed a motion for summary judgment.[1]  Plaintiff opposed the motion on June 17, 2013, and Defendant replied on June 28, 2013.

On January 2, 2014, Plaintiff filed an unsigned opposition to Defendant's motion for summary judgment and an unsigned response to Defendant's statement of undisputed facts.  (ECF Nos. 58, 59.)

---

[1]   Concurrent with the motion, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment. (ECF No. 44-1); see Woods v. Carey, 684 F.3d 934 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1988); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).

1

Defendant Vogel filed a motion to strike Plaintiff's duplicative and unsigned filings on January 3, 2014. A response to the motion to strike is unnecessary.

The motions are deemed submitted. Local Rule 230(l).

## II.   Defendant's Motion to Strike

On May 28, 2013, Defendant Vogel filed a motion for summary judgment. (ECF No. 44.) On June 17, 2013, Plaintiff filed his opposition to the motion for summary judgment, along with a supporting declaration, a statement of disputed facts and a response to Defendant's statement of undisputed facts. (ECF Nos. 46, 48-50.) On June 28, 2013, Defendant Vogel filed a reply to Plaintiff's opposition. (ECF No. 54.)

Subsequently, on January 2, 2014, Plaintiff re-filed his opposition, his statement of disputed facts and his response to Defendant's statement of undisputed facts. (ECF Nos. 58, 59.) Plaintiff did not sign any of the documents. On January 3, 2013, Defendant Vogel filed the instant motion to strike Plaintiff's duplicative and unsigned documents. (ECF No. 60.)

Both the Federal Rules of Civil Procedure and this Court's Local Rules require that all filed pleadings, motions and papers be signed by at least one attorney of record or by the party personally if the party is unrepresented. Fed. R. Civ. P. 11(a); Local Rule 131(b). As the Court cannot consider unsigned papers, it is recommended that Defendant Vogel's motion to strike Plaintiff's unsigned opposition, declaration, disputed facts and response be granted.

## III.   Defendant's Motion for Summary Judgment

### A.   Legal Standard for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a) summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Summary judgment must be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). However, the court is to liberally construe the filings and motions of pro se litigants. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). The "party seeking summary judgment always bears the initial responsibility of informing the district court

2

1 of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to
2 interrogatories, and admissions on file, together with the affidavits, if any, which it believes
3 demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 (internal
4 quotations and citations omitted).

5     If the moving party meets its initial responsibility, the burden then shifts to the opposing party
6 to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co.
7 v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this
8 factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to
9 tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in
10 support of its contention that the dispute exists. Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586
11 n.11.

12     The parties bear the burden of supporting their motions and oppositions with the papers they
13 wish the Court to consider and/or by specifically referencing any other portions of the record for
14 consideration. Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).
15 The Court will not undertake to scour the record for triable issues of fact. Simmons v. Navajo County,
16 Arizona, 609 F.3d 1011, 1017 (9th Cir. 2010).

17     In arriving at these findings and recommendations, the Court carefully reviewed and
18 considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts
19 and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference
20 to an argument, document, paper, or objection is not to be construed to the effect that this Court did
21 not consider the argument, document, paper, or objection. This Court thoroughly reviewed and
22 considered the evidence it deemed admissible, material, and appropriate.

23     **B. Summary of Relevant Allegations in Second Amended Complaint**

24     On October 12, 2009, the vacuum breaker on the toilet of the cell directly above Plaintiff's
25 (Cell No. 4B1R #20) broke. Every time the prisoner assigned to the cell above flushed his toilet,
26 contaminated, brown foul-smelling water drained from the vent over Plaintiff's sink, into Plaintiff's
27 sink spout and onto his floor, forming a puddle. Plaintiff notified Correctional Officers Murietta,
28

Beltrann and Licon of the problem. They notified Defendant Vogel and were told not to worry about it.

Defendant Vogel later stuck his head into the dayroom door. Upon seeing Defendant Vogel, Plaintiff yelled out of his cell door that the toilet in cell 20 was in disrepair and every time the prisoner flushed his toilet, brown foul-smelling water was draining into Plaintiff's sink spout and forming a puddle on his floor. Plaintiff further apprised Defendant Vogel that he needed to notify the plumber or move Plaintiff to another cell. Defendant Vogel responded and stated that he already knew about the situation and he was not submitting a work order or moving Plaintiff to another cell.

Earlier that morning, Defendant Vogel and Correctional Sergeant Marsh conducted a video interview of Plaintiff for a staff misconduct complaint that Plaintiff filed against Correctional Officer Patterson for the use of excessive force. Plaintiff alleges that Defendant Vogel refused to contact a plumber or move Plaintiff from his cell because Plaintiff continued to pursue his staff misconduct complaint against Correctional Officer Patterson.

Plaintiff claims that as a result of Defendant Vogel's actions he was deprived of clean drinking water and sanitation.

### C.  Statement of Undisputed Material Facts ("UMF")

1. On October 12, 2009, Sergeant Marsh conducted an interview of Plaintiff concerning a staff complaint that Plaintiff asserted against another correctional staff member. (Declaration of Vogel ("Vogel Dec.") ¶ 2)
2. Defendant Vogel recorded the interview of Plaintiff by Sergeant Marsh. (Id.)
3. At the relevant time, Sergeant Hernandez was the Facility Coordinator for Plaintiff's housing unit.[2] (Vogel Dec. ¶ 4; Declaration of Hernandez ("Hernandez Dec.") ¶ 2.)
4. On October 13, 2009, Sergeant Hernandez was informed by a floor officer that there was a toilet leak in cell #10, Building 4-B1R, which was Plaintiff's cell.[3] (Hernandez Dec. ¶ 3.)

---

[2] Plaintiff attempts to dispute this fact by citation to Paragraph 7 of his declaration. The relevant portion of Plaintiff's declaration admits that Sergeant Hernandez was the 1 building sergeant, but provides no evidence to dispute that Sergeant Hernandez was the Facility Coordinator for Plaintiff's housing unit. (ECF No. 50.)

[3] Plaintiff attempts to dispute this fact by citation to Paragraph 7 of his declaration. Although Plaintiff's declaration contains inadmissible hearsay, it confirms that Sergeant Hernandez was informed of a toilet leak. Fed. R. Evid. 401.

5.  Sergeant Hernandez promptly submitted a work order to have someone from Plant Operations perform an inspection and repair any leak.[4]  (Hernandez Dec. ¶ 4, Ex. A; Declaration of Mauldin ("Mauldin Dec.") ¶¶ 5, 7, Ex. A.)

6.  When staff encounters a maintenance issue in a housing unit, the Facility Coordinator for the housing unit prepares and submits a Work Order Request, identifying the location of the issue and a short description of the problem.  (Mauldin Dec. ¶ 2.)

7.  Following receipt of a Work Order, a member of the Plant Operations staff is dispatched to respond to the location, assess the situation, order materials if necessary, and then make repairs.  (Id.)

8.  Once a repair is completed, Plant Operations generates a report describing the work, any parts used, the name of the responsible employee, and the date of the repair.  (Mauldin Dec. ¶ 4.)

9.  If the Plant Operations staff determines the maintenance issue in a cell constitutes an emergency that may affect the health and safety of the occupant, the cell would be "redlined."  That means the cell would be designated as temporarily unavailable for inmate housing, and the occupant would be moved out.  (Mauldin Dec. ¶ 3; Hernandez Dec. ¶ 8.)

10. If the maintenance issue is minor, and Plant Operations staff determines a cell remains habitable, the cell is not redlined and the inmate will not be moved.  (Mauldin Dec. ¶ 3.)

11. In this case, Sergeant Hernandez accompanied Plant Operations staff member, W. Mauldin, to inspect the toilet leak in cell #10, which was occupied by Plaintiff.[5]  (Hernandez Dec. ¶ 5; Mauldin Dec. ¶ 6.)

---

[4]  Plaintiff attempts to dispute this fact by citation to his declaration.  The declarations and documentary evidence establishes that Sergeant Hernandez submitted a work order on October 13, 2013, the same day he learned of the leak.  (Ex. A to Hernandez Dec.)  Plaintiff offers no admissible evidence to raise a genuine dispute of material fact regarding the work order submitted by Sergeant Hernandez.

[5]  Plaintiff attempts to dispute this fact by citation to paragraph 7 of his declaration.  (ECF No. 48.)  In his declaration, Plaintiff denies that Sergeant Hernandez and staff member Mauldin came to his cell to inspect the water or toilet between October 13, 2009, and October 15, 2009.  (ECF No. 50.)  However, Plaintiff has not raised a genuine dispute regarding submission of the work order on October 13, 2009, the ordering of a new vacuum breaker by Mauldin, and the installation of the vacuum breaker by Maudlin on October 15, 2009.  Given Plaintiff's lack of a genuine dispute, it is evident that Maudlin inspected Plaintiff's cell sometime between October 13, and October 15, 2009, to determine the problem and to order the necessary vacuum breaker.

12. Mauldin determined that, to fix the problem in cell #10, a new vacuum breaker would need to be installed. (Id.)

13. Mauldin categorized the issue as Priority 3, which is non-emergency, and the cell was not redlined. (Id.; Hernandez Dec. ¶ 8.)

14. Mauldin then placed an order for a new vacuum breaker. (Mauldin Dec. ¶ 6.)

15. Based on the assessment of the water leak by Mauldin, who was a member of the Plant Operations staff, Sergeant Hernandez did not redline cell #10 or move Plaintiff to another cell.[6] (Hernandez Dec. ¶ 8; Mauldin Dec. ¶¶ 1, 6.)

16. On the morning of October 15, 2009, Plant Operations received a new vacuum breaker, and Mauldin installed it around 8:05 a.m.[7] (Mauldin Dec. ¶ 7, Ex. B; Hernandez Dec. ¶ 9, Ex. B.)

17. Defendant Vogel had no involvement with Mauldin's assessment that cell #10 remained habitable or Sergeant Hernandez's resulting decision not to redline cell #10. (Hernandez Dec. ¶¶ 8, 10; Vogel Dec. ¶ 4.)

18. On October 12, 2009, Defendant Vogel did not personally notify a plumber or move Plaintiff to another cell. (ECF No. 49, p. 2; ECF No. 54-2, p. 3, 4.)

### D. Disputed Facts

1. Mauldin inspected the cell and determined that clean water, and not sewage, from the upper tier was slowly leaking through the vent and causing the toilet in cell #10 to eventually overflow. (Hernandez Dec. ¶ 6; Maudlin Dec. ¶ 6.)

    Plaintiff's dispute appears to be that the water was contaminated. (ECF No. 50.)

2. Mauldin determined it was a minor leak, the water was not contaminated, and the toilet and sink in the cell continued to be safely operational. (Mauldin Dec. ¶ 6; Hernandez Dec. ¶¶ 6-7.)

---

[6] Plaintiff partially disputes this statement of fact. However, it is not clear which portion of the statement he disputes. There does not appear to be a genuine dispute that Plaintiff's cell was not redlined. Indeed, Plaintiff's complaint is based, in part, on his assertion that his cell was not redlined. To the extent that Plaintiff disputes the reason that his cell was not redlined, Plaintiff can only speculate as to the reason for Sergeant Hernandez's decision.

[7] Plaintiff has not raised a genuine dispute of material fact by his mere citation to Ex. B to the Declarations of Hernandez and Mauldin.

Plaintiff's dispute appears to be that the water was contaminated and that his toilet and sink were not safely operational. (ECF No. 50.)

3. Mauldin observed that flooding could be avoided by flushing the toilet regularly to clear the excess water. (Mauldin Dec. ¶ 6.)

### E. Discussion

Plaintiff's sole claim in this action is that Defendant Vogel retaliated against him by refusing to contact a plumber or move Plaintiff from his cell in retaliation for Plaintiff's misconduct complaint against Correctional Officer Patterson.

Within the prison context, a viable claim of First Amendment retaliation consists of five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir.2005); accord Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir.2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir.2009).

A plaintiff suing for retaliation under section 1983 must allege that "he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline." Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir.1994). The plaintiff does not need to show actual inhibited or suppressed speech, but that there was a chilling effect upon his speech. Rhodes, 408 F.3d at 569. The burden is on the plaintiff to plead and prove the absence of any legitimate correctional goals for the alleged conduct. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir.1995).

Plaintiff has not raised a genuine dispute of material fact sufficient to withstand summary judgment on his claim of retaliation asserted against Defendant Vogel. In particular, Plaintiff has failed to establish that Defendant Vogel took any "adverse action" against him. Although it is undisputed that Defendant Vogel did not notify a plumber or move Plaintiff to another cell in response to the purported leak, Defendant Vogel was not the person responsible for taking such actions. (UMF 3, 6, 15, 18.) Plaintiff has admitted that when staff encounters a maintenance issue in a housing unit, the Facility Coordinator for the housing unit prepares and submits a Work Order Request, identifying

the location of the issue and a short description of the problem.  (UMF 6.)  Plaintiff has not raised a genuine dispute that Sergeant Hernandez, and not Defendant Vogel, was the Facility Coordinator responsible for work orders in Plaintiff's housing unit.  (UMF 3, 6.)

Plaintiff also has admitted that, following receipt of a Work Order, a member of the Plant Operations staff is dispatched to respond to the location, assess the situation, order materials if necessary, and then make repairs.  (UMF 7.)  If the Plant Operations staff determines the maintenance issue in a cell constitutes an emergency that may affect the health and safety of the occupant, the cell would be "redlined."  That means the cell would be designated as temporarily unavailable for inmate housing, and the occupant would be moved out.  (UMF 9.)  If the maintenance issue is minor, and Plant Operations staff determines a cell remains habitable, the cell is not redlined and the inmate will not be moved.  (UMF 10.)  In this instance, Plant Operations staff member Maudlin determined that the water leak was minor, the water was clean and the cell was habitable.  Even finding a genuine dispute related to Mauldin's findings regarding the habitability of Plaintiff's cell or the nature of the leaking water (i.e., contaminated, sewage, or clean water), there is no dispute that Sergeant Hernandez made the decision not to redline Plaintiff's cell based on Mauldin's assessment and that Defendant Vogel had no involvement in that decision.  (UMF 15, 17.)

Based on the above, the Court finds that Plaintiff has failed to raise a genuine dispute of material fact that Defendant Vogel took any adverse action against Plaintiff in violation of the First Amendment.  Given this determination, the Court finds it unnecessary to address Defendant Vogel's arguments regarding qualified immunity.

### F.  Conclusion and Recommendation

Based on the above, IT IS HEREBY RECOMMENDED as follows:

1. Defendant's motion to strike Plaintiff's duplicate filings (ECF Nos. 58 and 59) be GRANTED; and
2. Defendant's motion for summary judgment, filed on May 28, 2013, be GRANTED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with these Findings and Recommendations, the parties may file written objections

1 with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and
2 Recommendations." The parties are advised that failure to file objections within the specified time
3 may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th
4 Cir.1991).

6 IT IS SO ORDERED.

7   Dated:   **January 13, 2014**               /s/ Barbara A. McAuliffe
8                                             UNITED STATES MAGISTRATE JUDGE